UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MOORER, et. al.,

    Plaintiffs,          CIVIL ACTION NO. 09-13725

vs.                          DISTRICT JUDGE STEPHEN J. MURPHY
                               MAGISTRATE JUDGE DONALD A. SCHEER

RAYMOND D. BOOKER, et.al.,

    Defendants,
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Defendants' Motion for Summary Judgment should be GRANTED, as Plaintiffs have failed to establish any violations of their federally secured constitutional rights.

\* \* \*

Plaintiff, John Moorer ("Moorer), while a state prisoner at the Kinross Correctional Facility, in Kinross, Michigan[1] filed the instant Complaint, in concert with four of his relatives/friends, pursuant to 42 U.S.C. § 1983, on September 21, 2009, against Raymond Booker, the Warden of the Ryan Correctional Facility (RRF) and twelve members of the RRF prison staff.

Moorer alleged that, while he was incarcerated at RRF from November 2006 through March 2008, he was subjected to conditions of confinement that constituted cruel and unusual punishment in violation of Eighth Amendment guarantees. Moorer maintained that he was denied visits with his family, that money was improperly deducted from his prison account, and that the staff at RRF retaliated against him when he complained about his

---

[1] Plaintiff is currently incarcerated at the Bellamy Creek Correctional Facility at 1727 West Bluewater Highway in Ionia, Michigan.

treatment. Family members of Moorer alleged that they had been harassed by visiting room prison staff, and sometimes had their visits with Moorer curtailed for no apparent reason. Claiming violations of their federal constitutional rights, Plaintiffs sought injunctive relief and compensatory damages.

Defendants filed a Motion for Summary Judgment, on March 22, 2010, based upon a failure to state a claim upon which relief may be granted. Many of the Defendants maintained that they had not been personally involved in the conduct that forms the basis of the complaint. They also assert that no retaliatory actions were taken against Moorer or his family members. Moorer filed a response on April 27, 2010, essentially reiterating the allegations found in his complaint.

DISCUSSION

To establish a valid claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights privileges or immunities secured by the Constitution or laws of the United States. See *West v. Atkins*, 487 U.S. 42, 49 (1988). Here, Defendants do not dispute that they acted under color of state law. Accordingly, I will focus on the alleged constitutional deprivations.

PERSONAL INVOLVEMENT

In order to state a claim for monetary damages under §1983, Plaintiffs must allege some specific, personal wrongdoing on the part of each individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. *Rizzo v. Goode*, 423 U.S. 362, 376 (1976); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989).

A review of the Complaint reveals that Plaintiffs have failed to establish that Defendants Raymond Booker (Warden), Willie Chapman (Assistant Warden), Marva Myles (Grievance Coordinator), Kevin O'Brien (Food Service Director), Mark Rudd (Administrative Officer) and Annette White (Hearing Investigator) had any direct, personal involvement in any of the alleged instances of misconduct cited in the Complaint. There is no allegation that any of these defendants personally retaliated against the Plaintiffs, or that they actively encouraged anyone else to do so. To the extent Moorer complains about a failure to respond to his grievances[2], the general rule is that a combination of knowledge of a prisoner's grievances and failure to respond to or remedy the complaints is insufficient to impose liability upon supervisory personnel under § 1983. *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982), cert. denied, 459 U.S. 833 (1982).

Defendants Booker, Chapman, Myles, O'Brien, Rudd and White were merely part of the prison administration during the relevant time, and there is no evidence that any "policy" personally promulgated by them had anything to do with Plaintiff's treatment. Moreover, Plaintiffs have not shown that these Defendants had "actual knowledge of a breakdown in the proper workings of the department." See *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). Absent a showing that they were personally or directly involved, these

---

[2]Defendants Booker, Chapman, Myles, O'Brien and Rudd allegedly denied a grievance brought by Mr. Moorer. Annette White simply mailed a notice to Plaintiffs Mary and Makia Wilson regarding a hearing to determine whether they could visit Moorer. In his response to Defendants' Motion for Summary Judgment, Plaintiff Moorer contends that the failure of these defendants to correct what he characterized as clear violations of his constitutional rights means that they implicitly condoned the conduct (See p.4 of Response at Docket #29). The Court in *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) specifically rejected this argument, and held that failure to act, even coupled with knowledge of a constitutional violation, does not give rise to liability under § 1983.

defendants should not be held liable for compensatory damages. Accordingly, the monetary claim against them should be dismissed regardless of the constitutional sufficiency of Plaintiffs' actual treatment.

MISSING FUNDS IN PRISON ACCOUNT

Moorer alleges that on January 13, 2008, he verbally complained to Defendants Anderson (Finance Manager) and Allen (Assistant Inmate Accounting) that $57.00 was missing from his inmate account (Complaint ¶5D). Defendant Allen responded, in a handwritten letter dated January 17, 2008, that Moorer had numerous debts totaling $284.24, which had to be repaid (See Plaintiffs' Exhibit D-2, attached to Complaint). Moorer filed a grievance regarding the matter, which was denied administratively by prison officials.

This allegation of misconduct, which will be construed as a claim of denial of due process, fails for several reasons. First, Moorer does not claim that either of the defendants actually took the money, or that they directed the money to be taken from the account. The only allegation against them is that they failed to replace the funds when officially informed (by grievance) of the alleged discrepancy (Complaint ¶5D (iii)). As stated previously, the mere denial of an administrative grievance does not amount to active unconstitutional behavior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, even the intentional deprivation of property does not violate due process when there is an adequate state tort remedy available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The State of Michigan provides adequate post-deprivation remedies for both negligent or intentional conversions of property. *Green v. State Corrections Dept.*, 30 Mich. App. 648 (1971), aff'd., 386 Mich. 459 (1971). Michigan, for instance, allows for loss-of-property suits against the

State in its Court of Claims, MCLA 600.6401 et seq., where compensation for alleged unjustifiable acts of state officials can be pursued. Since there was no indication that such remedies are inadequate or unavailable, Moorer has stated no claim upon which relief can be granted. The claims against Defendants Anderson and Allen should therefore be dismissed.

VERBAL HARASSMENT

The complaint also contains various allegations that prison staff harassed his family. Defendant Tonya Beard was accused of harassing Plaintiff Makia Wilson on November 29, 2006, when she allegedly asked Makia who her mother was (Complaint ¶5A). Correctional Officer Robert Harrington allegedly made derogatory comments like "you are just like your daddy", and "I promise you, he will not be here long" (Complaint ¶5A).

The general rule is that mere threats, abusive language and verbal harassment are insufficient to state a constitutional claim for relief under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 954-955 (6th Cir. 1987); *Freeman v. Trudell*, 497 F. Supp. 481 (E.D. Mich. 1980); *Rahman v. Stephenson*, 626 F. Supp. 886, 888 (W.D. Tenn. 1986). Therefore on the issue of verbal harassment Plaintiffs' fail to state a claim upon which relief may be granted.

DENIAL OF VISITATION

Plaintiffs John Moorer, Mary Wilson and Makia Wilson[3] claim that on November 29, 2006, their constitutional rights were violated when Defendant Tonya Beard attempted to restrict Mary and Makia Wilson from visiting Moorer. The visiting restriction resulted from

---

[3] The Complaint contains no substantive claim by Plaintiff Wanda Martin, although an attached affidavit alleges that visits by Wanda Martin with Plaintiff John L. Moorer were cancelled without notice or cause.

confusion concerning the family relationship of Makia Wilson. It is the policy of the Michigan Department of Corrections that prisoners are not allowed to receive visits from minors unless the minor is their child, stepchild or grandchild. See Michigan Administrative Code Rule 791.6609(2)(b). Nieces and nephews under the age of 18 are not allowed to visit prisoners.

Makia Wilson claimed that she was Moorer's daughter on a visitor application signed by Mary Wilson and dated May 4, 1999 (See Exhibit A-2, attached to Complaint). Two years earlier, Makia Wilson had completed a visitor application in which she stated that she was Moorer's niece (Exhibit A-3, attached to Complaint). When Defendant Beard discovered this discrepancy, she proposed a 90 day visitor restriction for Mary and Makia Wilson on the grounds that they had falsified the visitor application that listed Makia as Moorer's daughter.(Exhibit A-1).

At a subsequent administrative hearing, Moorer acknowledged that he acted as a "surrogate" father to Makia Wilson, and that she was actually his niece. The hearing officer, however, did not uphold the visitor restriction because Makia was too young at the time of the 1999 visitor application to understand, and be fully aware of, the responsibilities of her statement. The visitor restriction proposed by Defendant Beard was denied by the hearing officer, and Makia Wilson was allowed to visit Moorer (Exhibit A-3).

Plaintiffs claim that Defendant Beard's actions were arbitrary and capricious and in violation of their constitutional rights. An inmate, however, does not retain rights inconsistent with proper incarceration. See *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 199, 125 (1977). Freedom of association is among the rights least compatible with incarceration. *Id*. at 125-26. Moreover, "when a prison regulation impinges

6

on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Plaintiffs do not challenge the validity of MDOC's visiting policy. They claim Defendant Beard applied the policy in an arbitrary and capricious fashion in an effort to harass them. The only facts alleged in support of this claim is that the proposed visitor restriction was not upheld by the hearing officer. Since the parties now stipulate that Makia Wilson was not Moorer's daughter, and that she was listed as both his daughter and niece in two different visitor applications, there was reason for Defendant Beard to suspect that one of the forms had been falsified. Consequently, Plaintiffs cannot show that her actions were arbitrary or capricious. Thus Plaintiffs have failed to state a claim upon which relief may be granted.

<u>RETALIATION</u>

There are two categories of retaliation claims--general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific constitutional rights. In <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378 (6th Cir. 1989) the Sixth Circuit clarified the elements of each category and supplanted previous cases that had blurred the lines between the two. General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment. To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." <u>Id</u>. at 387. In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate while holding a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically

7

abuse him and levy harsh disciplinary sanctions against him. See *Cale v. Johnson*, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right. In such cases, an inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct. *Thaddeus-X*, 175 F.3d at 394-395. Plaintiff has the burden of proving all three elements.

Even if it is assumed, without deciding, that Moorer satisfied the first two elements listed above, he has failed to allege sufficient facts that establish the third. He must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). He has done nothing more than simply allege retaliation, without establishing a causal connection. See *Thaddeus-X*, 175 F.3d at 399-400.

### RETALIATION IN THE FORM OF PRISON TRANSFER

Moorer asserts that his transfer in February 2008, from Ryan Correctional Facility to G. Robert Cotton Correctional Facility, was in retaliation for complaining about funds allegedly missing from his account. A prisoner has no independent constitutional right to confinement in a particular place, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and has no right to be transferred to a prison facility of his choice. *Hewitt v. Helms*, 459 U.S. 460,

467 (1983) (transfer of an inmate to less amendable and more restrictive quarters is well within the terms of confinement ordinarily contemplated by a prison sentence).

Defendant Michael Nowak, RRF's transfer coordinator, avers that Plaintiff's transfer was a routine transfer that was made in order to make room for an incoming Michigan Prisoner Reentry Initiative (MPRI) prisoner. (Affidavit of Defendant Nowak, attached as Exhibit 7 to Defendants' Motion for Summary Judgment). All Plaintiff has shown is that he was transferred in February 2008, coupled with the fact that he had complained about funds allegedly missing from his prison account in January 2008. From that he jumps to the conclusion that his transfer was the result of him filing his grievance.

Moorer cannot point to hard evidence that supports his conclusion. The only evidence Moorer offers to establish a causal connection is a statement made by Defendant Robert Harrington, who allegedly stated: "I promise you all, he will not be here long, I promise you that." (Complaint ¶5A, and attached Exhibits A-4, A-5). Moorer asserts that his claim is factually similar to the one brought in *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005), and should therefore survive summary judgment (See Plaintiff's Response to Defendants Motion for Summary Judgment at p. 8).

A review of the facts in *Siggers-El* reveals some important differences between that case and the instant one. The plaintiff in *Siggers-El* also relied on a statement by a prison official to make a retaliatory transfer claim. *Id*. at 697 ("If you go over my head again, your ass is out of here"). But the plaintiff in *Siggers-El* had other evidence to help establish a causal connection. In that case, there were significant departures from the regular transfer procedures, which supported plaintiff's assertion that the transfer was not routine. *Id*. at 698. There was also closer relationship between the protected conduct (going over a prison

official's head to state a grievance), the adverse action (the same prison official transferring the inmate), and the evidence of causal connection (the prison official threatening to transfer the inmate). Id. at 697. Each of these events involved the plaintiff and the same prison official.

In the instant case, the events involved Moorer and different prison officials. The protected conduct, a verbal complaint about missing funds from his prisoner account, was made to a non-party prison official. The adverse action, a transfer, was done by Defendant Nowak. The only evidence of causal connection comes from a statement made by Defendant Harrington. Moorer cannot show that Defendant Nowak was aware of his complaint about the missing funds at the time he was transferred. Plaintiff offers no explanation as to how Defendant Harrington, whose primary duties involved performing security related tasks, would have been aware of the verbal complaint about missing funds, the transfer or reasons for the transfer. His statement is therefore insufficient to establish a casual connection between the protected conduct and the adverse action. As Plaintiff has failed to produce evidence that his complaint about missing prison funds was a substantial or motivating factor behind his transfer, Defendants are entitled to summary judgment on the claim of retaliation in connection with Moorer's transfer.

### RETALIATION IN THE FORM OF ADVERSE EMPLOYMENT ACTION

Plaintiff Moorer contends that prison officials at RRF retaliated against him for filing a grievance against Defendant Graham, a food service supervisor, by denying him a promotion within food services. Moorer claims that there was an opening for a position he wanted, and that the position remained open from December 2007 to February 2008 (Complaint ¶5C). He further states that this denial of promotion was in retaliation for filing a grievance. Id.

Defendant Tina Pope, the Director of RRF's food service operation, states that there was an opening for the position in question on December 12, 2007, but that the position was filled prior to December 20, 2007 (see Pope Affidavit, attached as Exhibit 9 ¶¶ 1, 16 to Defendants' Motion for Summary Judgment). Defendant Pope further asserts that the prisoner who received the promotion had more experience in food service than Plaintiff Moorer. (¶16). Defendant Pope presented the employment records of RRF's food service department to support her assertion.

It is well established that no prisoner has a constitutional right to a particular job. *Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir.2001)(district court properly dismissed as frivolous plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)(no constitutional right to prison employment) *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)("No prisoner has a constitutional right to a particular job or to any job").

Plaintiff does not set forth a valid retaliation claim against any of the defendants. According to the uncontested affidavit and prison employment records submitted by Defendant Pope, the job position in question was given to another prisoner who had been employed in food service longer than Moorer. In addition, Moorer's asthma condition and breathing difficulties prevented him performing the job in a satisfactory manner (Pope Affidavit, attached as Exhibit 9 ¶ 14). Therefore, the denial of the job promotion was rationally related to a legitimate penological interest in maintaining an operationally efficient prison food service program. Since Moorer does not have any right to prison employment, he has failed to set forth a valid retaliation claim against Defendant Pope or any other defendant.

## OTHER RETALIATION CLAIMS

Moorer makes three other claims of retaliation (Complaint ¶5D(v)(1-3)), but he fails to demonstrate that the exercise of a protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. Moorer asserts that he was harassed by visiting room staff, and he cites the proposed visitor restriction as a form of retaliation. When providing a chronology of events, Moorer acknowledged that the proposed visitor restriction (November 2006) occurred prior to the filing of a grievance protesting the restriction, or any of the other alleged instances of misconduct by prison officials cited in the Complaint. In a retaliation claim, the adverse action cannot happen before the protected conduct.

Moorer also claims that he was issued a major misconduct ticket by the visiting room staff in retaliation for filing grievances against prison officials. However, Moorer did not name the corrections officer who issued him the ticket as a defendant in the instant lawsuit. He also does not allege what protected conduct he was engaged in that led the unknown officer to retaliate by ticketing him. Even though Moorer maintained that he was harassed by members of the food service supervisory staff, he fails to name which staff members harassed him. He also fails to provide the details concerning the form of harassment, or explain the protected conduct that led to the retaliation. Consequently, Moorer has failed to state a claim upon which relief may be granted on any of the allegations of retaliation. He has not allege sufficient facts to establish that the adverse action was motivated by the inmate's protected conduct.

For the forgoing reasons, the undersigned is persuaded that the Defendants' Motions for Summary Judgment should be GRANTED and the instant case DISMISSED.

Given this recommendation, Moorer's request for injunctive relief (Docket #30) should also be denied.

NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                     s/Donald A. Scheer
                                                     DONALD A. SCHEER
                                                     UNITED STATES MAGISTRATE JUDGE

DATED: August 31, 2010

---

**CERTIFICATE OF SERVICE**

I hereby certify on August 31, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 31, 2010: **John Moorer.**
                         s/Michael E. Lang
                         Deputy Clerk to
                         Magistrate Judge Donald A. Scheer
                         (313) 234-5217